IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BRENDA SMELTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 5:14-cv-00358 (LJA) |
| | : | |
| SOUTHERN HOME CARE SERVICES,: | | |
| doing business as, RESCARE SERVICES,: | | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 18). For the foregoing reasons, Defendant's Motion is **GRANTED**.

## FACTUAL BACKGROUND[1]

Southern Home Care Services, Inc., Defendant, is a provider of personalized home health care, including professional nursing, personal care, Alzheimer's/dementia care, homemaking, companionship and respite. (Doc. 25, ¶¶ 1, 2). Kelly McDougal is Defendant's executive director, and she oversees operations at branch offices located in Macon, Perry, Newnan, and Columbus, Georgia. *Id.* at ¶ 4. Brandi Talton is the branch manager of the Perry office and is the front line manager for employees in Perry. *Id.* at ¶ 5. McDougal hired Brenda Smelter, Plaintiff, an African-American female, as a Customer Service Supervisor (CSS) to begin employment with Defendant in the Perry office on July 2, 2013. *Id.* at ¶ 27. When Plaintiff was hired, the Perry office employees were Talton; Connie Raleigh, the office

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answer to the Complaint (Doc. 5), Defendant's Statement of Undisputed Facts (Doc. 18-1), Plaintiff's Response to Defendant's Statement of Undisputed Facts (Doc. 26), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

manager; Catherine Smallwood, a CSS; and Mary Noll, a nurse. *Id.* at ¶ 6. All of these employees were white.

The function of a CSS is to coordinate with clients, caregivers, and private and public payers to ensure clients receive the service requested, caregivers are appropriately scheduled, and caregivers' hours are accurately reported. *Id.* at ¶ 34. The CSS manages client schedules and coordinates visits with caregivers. *Id.* at ¶ 35. Once the time of each visit is reported, the CSS "links" the actual time back to the master client schedule, ensuring that caregivers are paid correctly. *Id.* The caregivers report their time using a system called "Telephony," and the CSS is responsible for making sure that caregivers use the system. *Id.* at ¶ 36. The CSS also provides the caregivers with client care plans and other information pertaining to their schedule visits. *Id.* at ¶ 39.

At some point after Plaintiff began working, Defendant noted that Plaintiff was having difficulties with her duties. For example, the office manager had to handle much of Plaintiff's linking and payroll duties. *Id.* at 63. McDougal also began hearing reports from employees that Plaintiff was causing conflict in the office, that she was unprofessional when answering the phone, that she had lied about other employees, and that she acted like she did not care about the job. *Id.* at ¶ 70. Talton offered to meet with Plaintiff to discuss problems that she was having completing her duties. *Id.* at ¶ 54. At that time, Plaintiff denied that she needed help. *Id.* Later, on July 31, 2013, Plaintiff met with Talton to discuss the fact that Plaintiff felt she did not have enough training. *Id.* at ¶ 55. Talton made suggestions to Plaintiff on how to improve, and offered again to meet with Plaintiff to work through her problems. *Id.* at ¶¶ 56-58. McDougal and Talton decided to provide Plaintiff with additional training. *Id.* at ¶ 66. This was the first time additional training had ever been required for a CSS. *Id.* The trainer's assessment was that Plaintiff was not paying attention and claimed to understand concepts that she really did not understand. *Id.* at ¶ 68.

In addition to problems with the performance of her duties, Plaintiff also had conflicts with coworkers. During Plaintiff's training, she contends that someone stole $100 from her purse. *Id.* at ¶ 45. According to Plaintiff, another employee, Ms. Worthy, was the only other person with access to the desk where her purse was. *Id.* at ¶ 46. Defendant

believes that Plaintiff accused Worthy of stealing the money. *Id.* An investigation did not reveal who, if anyone, stole the money. *Id.* at ¶ 47. On another occasion, Plaintiff accused another employee, Ms. Walthall, of lying about a conversation regarding Plaintiff's possible transfer. *Id.* at 72. Plaintiff denies that she asked for an opportunity to transfer and contends that Walthall approached her with the offer. *Id.*

According to Plaintiff, she heard racist remarks every day during her employment. (Doc. 21, at 181:12-15). Plaintiff heard Smallwood make comments comparing black people to monkeys, saying that black men were the scum of the earth, and that black women always had babies on welfare. *Id.* at 190:10-19. On at least one occasion, Plaintiff heard Smallwood say that Barack Obama's big ears made him look like a monkey. *Id.* Plaintiff also heard Raleigh, the office manager, discuss an occasion where she witnessed people getting off the bus at Wal-Mart. Raleigh said that the people looked like they were chained together and she wished that she could send them back to Africa. *Id.* at 193:15-23. Plaintiff also heard Ms. Smallwood, another employee with whom she would later get into an altercation, say that Plaintiff's hair made her look like "she's a female planet of the ape" and that Smallwood was unaware that black people could be buried on Sundays. *Id.* at 296:4-297:17.

Finally, on September 9, 2013, the day of Plaintiff's termination, Smallwood called Plaintiff a "dumb black nigger," and Plaintiff felt that she was going to charge over the desk at Plaintiff. *Id.* Raleigh contacted Talton because Plaintiff and Smallwood were having an altercation. (Doc. 25 at ¶ 82). Plaintiff and Talton spoke on the phone, and Plaintiff claims that she told Talton about Smallwood and Raleigh's racist remarks. *Id.* at ¶ 83. After speaking with Plaintiff, Talton called McDougal to inform her of the situation. *Id.* at ¶ 84. McDougal instructed Talton to terminate Plaintiff because she was not a good fit and was still within the introductory probationary period. *Id.* at ¶¶ 88, 90. The decision to terminate Plaintiff was finalized before Talton arrived at the Perry office. *Id.* at ¶ 89. Defendant claims that the first time Plaintiff mentioned any racist remark was in the meeting where Talton informed Plaintiff she was terminated. *Id.* at 91.

Some white employees received disciplinary write-ups and evaluations, but were not terminated. Megan Valasky, a CSS hired after Plaintiff's termination, was reprimanded for

not ensuring that caregivers were using the Telephony system. (Doc. 35 at 103:7-11). Vanessa Lind, a CSS who returned from maternity leave after Plaintiff's termination, received multiple complaints regarding her lack of customer service towards clients and referral case managers. *Id.* at 106:5-19. Smallwood received a "final written warning" after receiving three complaints for lack of communication and dishonesty with clients regarding service charges. *Id.* at 128:5-9.  Another white employee, Kim Thompson, the CSS who immediately preceded Plaintiff in the Perry office, was terminated for failure to perform her job duties. (Doc. 37, ¶ 120).

Defendant has a written anti-harassment policy, providing that employees who observe, or believe they are subject to unwelcome harassment have a responsibility to report it to one of their supervisors, or if necessary up the chain of command until the matter is resolved. (Doc. 25, ¶ 9). The policy is provided to all new hires, and was provided to Plaintiff. *Id.* at ¶ 11.

## PROCEDURAL HISTORY

On October 8, 2014, Plaintiff commenced this action against Defendant. (Doc. 1). Defendant moved for summary judgment on August 31, 2015 (Doc. 18), and Plaintiff responded on October 5, 2015 (Doc. 24). Defendant replied on October 29, 2015 (Doc. 40). As such, Defendant's Motion is now ripe for review. *See* M.D. Ga. L.R. 7.3.1(a).[2]

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is

---

[2] Local Rule 7.3.1 advises that "surreply briefs are not favored," and requires any party desiring to file a surreply to "move in writing for permission to do so within fourteen days of the filing of the brief to which reply is desired, succinctly specifying the reasons why additional briefing is necessary." The rule explicitly states that the proposed brief is not to accompany the motion. In violation of this rule, on November 3, 2015, Plaintiff filed a surreply without a motion explaining the reasons that such a brief was necessary. (Doc. 41). As such, Plaintiff's surreply (Doc. 41) and Defendant's sur-surreply (Doc. 42) will be disregarded by the Court.

entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 Fed. Appx. 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 Fed.Appx. 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." *Matsuhita*, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## DISCUSSION

Plaintiff claims discriminatory termination, hostile work environment, and retaliation in violation of Title VII and 42 U.S.C. § 1981. (Doc. 1). Discrimination claims brought under Title VII and 42 U.S.C. § 1981 employ the same analytical framework. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008).

### I.    Discriminatory termination

Title VII makes it unlawful for employers "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff argues that Defendant violated Title VII by terminating Plaintiff's employment because of her race. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Ross v. Jefferson County Dept. of Health*, 701 F.3d 655, 661 (11th Cir. 2012) (quoting *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

An employee can waive a claim of discriminatory discharge by unequivocally conceding that her termination was not racially motivated. *Id.*; *Peters v. HealthSouth of Dothan, Inc.*, 542 Fed. Appx. 782, 787 (11th Cir. 2013). In this case, when asked if she thought that her termination was racially motivated, Plaintiff stated in her deposition that she did not feel that her termination had anything to do with her race. (Doc. 21 at 245:22-246:7). As such,

Plaintiff waived her discriminatory discharge claim. *See Ross*, 701 F.3d at 661 (finding an unequivocal concession when plaintiff responded, "no").

## II.     Hostile work environment

A hostile work environment claim under Title VII is established upon proof that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) *quoting Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993). "A plaintiff wishing to establish a hostile work environmental claim must show: (1) that [she] belongs to a protected group; (2) that [she] has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under a theory of vicarious or direct liability." *Id.* Defendant concedes that Plaintiff belongs to a protected group and was subject to unwelcome harassment based on her race. At issue is: (1) whether the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (2) whether Defendant is responsible for such an environment under a theory of vicarious liability.

There is a subjective and objective component to the determination of whether harassment was sufficiently severe. *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1249 (11th Cir. 2014). The employee must subjectively perceive the harassment as being severe, but the objective severity should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Id.* Objective considerations include: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Palmer v. McDonald*, 624 Fed. Appx. 699, 703 (11th Cir. 2015); *see also Id.* at 1276.

While Plaintiff subjectively perceived the harassment as severe, it was not objectively severe or pervasive. "Frequent and consistent use of offensive language weighs in favor of a plaintiff's hostile work environment claim." *Freeman v. City of Riverdale*, 330 Fed.Appx. 863, 866 (11th Cir. 2009). Here, Plaintiff testified that she heard racist comments every day that she went to work. (Doc. 21 at 181:12-15; 186:18-187:9).[3] Severe conduct, however, must rise above the level of "off-handed comments in the course of casual conversation." *Miller v. Kenworth of Dothan*, 277 F.3d 1269, 1277 (11th Cir. 2002). For example, it may be comments directed at employees by supervisors, comments related to job performance, use of derogatory names in an intimidating manner, or an escalation of incidents over time. *See, e.g. Id.*; *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1304 (11th Cir. 2012); *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1252 (11th Cir. 2014). The comments Plaintiff complains of are offensive, but do not rise to the level of severity required to meet the objective test.

Furthermore, while Plaintiff also argues that Smallwood physically threatened her by standing up like she was ready to charge at her over the desk while calling Plaintiff a derogatory term, there is no allegation that, other than standing up, Smallwood made any physical threats. Nor are there allegations of threats of racial violence. *See, e.g.*, *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1252 (11th Cir. 2014) (finding that Plaintiff was physically threatened when he discovered a noose in the break room); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1304 (11th Cir. 2012) (finding that Plaintiff was physically threatened by men wearing confederate attire and holding item that could be perceived as weapon approaching Plaintiff at night). Moreover, although no single factor must be shown for Plaintiff to demonstrate a hostile work environment, "the complete lack of any evidence" that harassment interfered with Plaintiff's job performance "weighs strongly against the finding that [Plaintiff] presented sufficient evidence for a reasonable jury to find a hostile work environment." *Forston v. Carlson*, 618 Fed. Appx. 601, 608 (11th Cir. 2015).

---

[3] Defendant argues that Plaintiff's allegations are supported by a sham affidavit. "A court may determine that an affidavit is a sham when it contradicts previous deposition testimony and the party submitting the affidavit does not give any valid explanation for the contradiction." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1237 (11th Cir. 2010). To apply the doctrine, courts must find an inherent inconsistency between the affidavit and the prior sworn testimony. *Kilgore v. Trussville Development, LLC*, 646 Fed.Appx. 765, 771 (11th Cir. 2016). There is no apparent inconsistency between the affidavit and prior sworn testimony, as Plaintiff testified that she was subject to harassment every day in her deposition, and did not mention the topic at all in her affidavit. (Docs. 24-1; 21 at 181:12-15; 186:18-187:9).

Even if the conduct complained of was objectively severe enough, Plaintiff has not shown that Defendant was vicariously liable for the hostile environment. "For harassment by a coworker, 'the employer will be held directly liable if it knew or should have known of the harassing conduct but failed to take prompt remedial action.'" *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1258 (11th Cir. 2014) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002)).[4] "[A] victim of coworker harassment must show either actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." *Miller*, 277 F.3d at 1278. Plaintiff argues that Defendant had actual knowledge because Plaintiff told Talton about the comments on the phone immediately before her termination. Regardless of factual disputes regarding the content of the phone conversation, Defendant's alleged actual knowledge came into being only after Plaintiff engaged in conduct resulting in her termination. Defendant cannot be held vicariously liable for the existence of a hostile work environment of which it had no actual or constructive knowledge and there is no evidence that Defendant had such knowledge until after the terminating event.

## III.    Retaliation

Under Title VII, employers are prohibited from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff presents no direct evidence of retaliation. Thus, the *McDonnell Douglas* burden shifting framework applies. *See Thomas v. CVS Pharmacy*, 336 Fed. Appx. 913, 915 (11th Cir. 2009) ("[A] retaliation claim based on circumstantial evidence is analyzed according to the *McDonnell Douglas* framework."). To make a prima facie case for retaliation using circumstantial evidence, Plaintiff must show: "(1) he engaged in a protected activity; (2)

---

[4] Defendant argues that the *Faragher / Ellerth* defense should apply here. The defense only applies, however, to conduct by a supervisor. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-808 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "[A]n employee is a 'supervisor' for the purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance v. Ball State University*, 133 S.Ct. 2434, 2439 (U.S. 2013). Neither party has presented any evidence that Smallwood or Raleigh were supervisors under this definition. As such, the Court will apply the co-worker standard.

he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Defendants do not contest that Plaintiff's termination was an adverse employment action. *See also Id.* Thus, the question is whether Plaintiff engaged in protected activity and whether there was causation.

Plaintiff alleges that she engaged in protected activity when, on the day she was fired, Plaintiff called Talton and told her "everything that went on," including "all of the racial statements made in the office." (Docs. 21 at 249:23-250:3; 24-1, ¶ 3). "To engage in protected activity under the opposition clause of § 2000e-3a, a plaintiff must have a good faith, objectively reasonable belief that the employer is engaging in unlawful employment practices." *Harris v. Florida Agency for Health Care Admin.*, 611 Fed.Appx. 949, 951 (11th Cir. 2015). The plaintiff's belief is measured "against the substantive law at the time of the offense to determine whether his belief was objectively reasonable." *Id.* Plaintiff had an objectively reasonably belief that she was subjected to a hostile work environment as a result of the racial comments and made an informal complaint to her supervisor. Informal complaints to supervisors are protected activity. *Shannon v. Bellsouth Telecommunications, Inc.*, 292 F.3d 712, 715 n. 2 (11th Cir. 2002); *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989). Thus, Plaintiff engaged in protected activity.

To show causation, "a plaintiff [must] demonstrate that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008). Close temporal proximity, including periods as long as one month, between the protected activity and adverse employment action give rise to an inference of causation. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Perry v. Rogers*, 627 Fed.Appx. 823, 833 (11th Cir. 2015). Plaintiff asserts that she called Talton to complain about harassment on the same day as her termination. (Docs. 24-1, ¶ 3; 25, ¶ 84). The close temporal proximity establishes an inference of causation. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004); *Perry v. Rogers*, 627 Fed.Appx. 823, 833 (11th Cir. 2015). Accordingly, Plaintiff has established a prima facie case of retaliation.

As Plaintiff has set forth a prima facie case of retaliation, Defendants must offer a non-retaliatory reason for the employment decision. *See Thomas*, 336 Fed. Appx. at 915. Defendant argues that it terminated Plaintiff because: 1) she was a substandard employee who required remedial training; 2) she falsely accused coworkers of lying and stealing; and 3) she was involved in an altercation. (Doc. 18-1 at 16, n.5). These reasons are legitimate and nondiscriminatory. *See Bojd v. Golder Associates, Inc.*, 212 Fed.Appx. 860, 861-62 (11th Cir. 2006) (finding that Plaintiff's attitude, lack of respect towards colleagues, and failure to meet overall expectations of an employee were legitimate and nondiscriminatory reasons for termination); *Jones v. United Space Alliance, LLC*, 170 Fed.Appx. 52, 57 (11th Cir. 2006) (finding that employee's poor performance was legitimate reason for termination); *Saridakis v. South Broward Hosp. Dist.*, 681 F. Supp. 2d 1338, 1350 (S.D. Fla. 2009) (finding that Plaintiff's confrontational behavior was a legitimate reason for non-renewal of contract).

Defendant having set forth a nondiscriminatory rationale for the employment decision, the burden shifts to Plaintiff to show that the proffered reason is pretextual. *See Thomas*, 336 Fed. Appx. at 915. "In order to show pretext, the plaintiff must 'demonstrate that the proffered reason was not the true reason for the employment decision.'" *Jackson v. State of Alabama State Tenure Com'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) *quoting Tex. Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 256 (11th Cir. 1981). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Champman v. Al Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). At the summary judgment stage, Plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson*, 405 F.3d at 1289.

Plaintiff argues that Defendant's reasoning was pretextual because Plaintiff did not actually accuse coworkers of lying or stealing and coworkers did not find her confrontational. "A plaintiff does not demonstrate pretext by showing that the defendant had a mistaken belief about the facts that formed the basis for the alleged nondiscriminatory

reason. Instead, the plaintiff must present evidence that the defendant did not honestly believe the facts on which it based its nondiscriminatory reason." *Ekokotu v. Boyle*, 294 Fed. Appx. 523, 526 (11th Cir. 2008). Plaintiff has presented no such evidence.

Plaintiff also argues that Defendants reasoning was pretextual because Plaintiff's performed as well as her peers who were not terminated. In essence, Plaintiff argues that the fact that similarly situated employees were not fired is proof that the Defendant's proffered reason for her termination- her substandard performance and conflict with other employees- was not the real reason she was fired. Plaintiff fails to establish pretext because she has not established that the comparators she offered were similarly situated. "In determining whether employees are similarly situated …, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. The most important factors in the disciplinary context ... are the nature of the offenses committed and the nature of the punishments imposed. In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Silvera v. Orange County School Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (internal citations and quotations omitted).

Plaintiff presents Valasky, Lind, and Smallwood as comparators. Plaintiff, however, fails to establish that these persons are valid comparators. First, Plaintiff provides no evidence that Lind and Smallwood were in the probationary period, as was Plaintiff, when their alleged performance issues occurred. While not stated, as Valasky was hired after Plaintiff, the Court assumes she was still in the probationary period. Thus, Plaintiff has not established that Lind and Smallwood were similarly situated. Moreover, while Plaintiff notes specific performance issues, she does not allege that any of the three had the plethora of problems she did. Nor does she allege that any of the proffered comparators received remedial training or had duties shifted to other employees. Accordingly Plaintiff has not presented evidence that similarly situated employees were disciplined less severely.

As for Plaintiff's claim that the quality of her work was better than other employees based on the linking percentages, that Plaintiff believes that the linking percentage is the

12

correct measure of job performance is irrelevant. "[A]n analysis of pretext focuses on the employer's beliefs, not the employee's own perceptions of his performance." *Jones v. United Space Alliance, LLC*, 170 Fed. Appx. 52, 57 (11th Cir. 2006). In addition, the fact that McDougal both hired and fired plaintiff creates an inference that her actions were not based on Plaintiff's race. *See Hawkins v. BBVA Compass Bancshares, Inc.*, 613 Fed.Appx. 831, 837 (11th Cir. 2015); *Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998); *Thompson v. Tyson Foods, Inc.*, 939 F.Supp.2d 1356, 1370 (M.D.Ga. 2013). Accordingly, Plaintiff has failed to prove that Defendant's proffered legitimate reason is pretext. Thus, Plaintiff's retaliation claims fails as a matter of law.

## CONCLUSION

In light of the foregoing, Defendant's Motion for Summary Judgment (Doc. 18) is **GRANTED**.

**SO ORDERED**, this   26th   day of    September   , 2016.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**